Sophia M. Rios (SBN 305801)
srios@bm.net
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
Tel:   (619) 489-0300
Fax:   (215) 875-4604

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELBA ANGELICA PADOVANI,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>INFLECTION RISK SOLUTIONS, LLC,<br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(1) Violation of 15 U.S.C. § 1681e(b)<br><br>JURY TRIAL DEMANDED |

   Plaintiff Elba Angelica Padovani ("Plaintiff" or "Ms. Padovani"), by and through her undersigned counsel, brings the following Complaint against Inflection Risk Solutions, LLC ("Defendant" or "Inflection") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a facially inaccurate background check report that falsely portrayed Plaintiff as a convicted felon.

COMPLAINT

**INTRODUCTION**

1. This is an individual action for damages, costs, and attorneys' fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to a variety of end users who use the reports to make a variety of business decisions.

3. Defendant falsely reported to Airbnb that Plaintiff is a convicted felon.

4. Defendant's reporting was grossly inaccurate and untrue. Plaintiff is not a convicted felon.

5. Airbnb denied Plaintiff's rental application after receiving a background check report ("background report") from Defendant, which included an inaccurate criminal record falsely portraying Plaintiff as a convicted felon.

6. Defendant's inaccurate background report could have been easily remedied had Defendant consulted the widely available underlying public court records related to the offense prior to publishing Plaintiff's report to Airbnb.

7. Had Defendant performed even a cursory review of such public records, it would have discovered that the felony conviction reported by Inflection was in fact a misdemeanor.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers.

9. Defendant's failure to employ reasonable procedures resulted in Plaintiff's background report being grossly inaccurate.

10. Defendant committed this violation pursuant to its standard policies and practices, which harm innocent consumers by prejudicing prospective users of their background reports with inaccurate criminal record information.

11. Defendant's inaccurate reporting cost Plaintiff two short-term rental opportunities that she had long planned for, causing her to suffer a range of actual damages, including without

limitation, economic losses; damage to her reputation; and emotional distress including mental anguish, anxiety, humiliation, stress, frustration, embarrassment, and fear of losing her job at a law firm and notary license due to the false information being circulated about her through her consumer reports.

12. As such, Plaintiff brings claims under the Fair Credit Reporting Act ("FCRA") for Defendant's failure to follow reasonable procedures to assure maximum possible accuracy in the preparation of her background report and the files Defendant published and maintains pursuant to 15 U.S.C. § 1681e(b).

## THE PARTIES

13. Plaintiff Elba Angelica Padovani is an individual person residing in Stuart, Florida, and is a "consumer" protected by the FCRA.

14. Defendant Inflection Risk Solutions, LLC ("Defendant" or "Inflection") is a limited liability company doing business throughout the United States, including in this District, and has a principal place of business located at 555 Twin Dolphin Drive, Suite 600, Redwood City, CA, 94065-2130.

15. Among other things, Defendant sells background checks to Airbnb for its use in deciding whether to allow prospective consumers to rent short term rental units through its platform. These reports are provided in connection with a business transaction initiated by the consumer.

16. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing background reports to third parties, and uses interstate commerce, including the internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or for credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR CONSUMERS

23. Despite its name, the Fair Credit Reporting Act ("FCRA") covers more than just credit reporting. The FCRA also regulates background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides several protections for consumers who are subjected to background checks as part of potential business transactions.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Inflection, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Defendant disregarded these duties with respect to Plaintiff's background report.

## FACTS

**Plaintiff Plans a Trip to Lay Her Deceased Mother to Rest in Mexico**

28. In or about March 2022, Plaintiff booked a trip to Mexico as she planned to spread her late mother's ashes in Tepoztlan and celebrate Dia De Los Muertos (Day of the Dead) in Mexico City.

29. Plaintiff had booked the trip approximately seven (7) months in advance as this was a particularly special occasion for Plaintiff as she was grieving the loss of her mother and the entire purpose of the trip was to pay her respects to her late mother by spreading her ashes in Tepoztlan.

30. Luckily, Plaintiff found an open listing in Tepoztlan on Airbnb within her budget at $317.60 for her stay from October 29 through October 31, 2022.

31. In March 2022, Plaintiff paid a 50 percent deposit in the amount of $158.80 and applied to lease the property in Tepoztlan.

32. On or about the same day, Plaintiff also found an open listing in Mexico City on Airbnb within her budget at $294.09 for her stay from October 31 through November 5, 2022.

33. In March 2022, Plaintiff paid a 50 percent deposit in the amount of $142.05 and applied to lease the property in Mexico City.

34. Plaintiff was pre-approved for both rentals and, as part of the application process, Airbnb required Plaintiff to undergo a background check.

**Inflection Publishes an Inaccurate Consumer Report to Airbnb in October 2022**

35. On or about October 14, 2022, about two weeks before her trip, Plaintiff was charged the second half of the rental fees and confirmed that her reservations for her upcoming trip to Mexico were all set.

36. On or about October 22, 2022, approximately one week before Plaintiff's trip, Airbnb ordered a background check report from Inflection, which Inflection prepared and published to Airbnb later that same day.

37. The background check report published by Inflection regarding Plaintiff was grossly inaccurate.

38. Specifically, Inflection inaccurately reported the following criminal record from Martin County, Florida:

> **Court Name: FL Martin Court**
> **Description: DRIVING UNDER THE INFLUENCE-IMPAIRMENT-ONE PRIOR**
> **Case Filing Date: 2015-03-19**
> **Disposition: ADJUDICATED GUILTY**
> **Offense Date: 2015-03-18**
> **Offense Degree: F**
> **Offense Level: FELONY**

39. The above-referenced conviction is grossly inaccurate: Plaintiff has never been convicted of a felony in her life.

40. A cursory review of the widely available underlying public court records from Martin County, Florida confirms that the felony conviction reported by Inflection was inaccurate because Plaintiff was only ever charged with and took a Nolo Contendere plea to a misdemeanor level offense.

41. It is indisputable that had Inflection actually consulted or obtained the widely available underlying public court records or followed reasonable procedures to assure maximum possible accuracy, it would have seen this obvious error.

42. These facts demonstrate that Inflection failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's background check report, in violation of the FCRA, 15 U.S.C. § 1681e(b).

**Airbnb Cancels Plaintiff's Accommodations Due to Defendant's Inaccurate Reporting**

43. On or about October 23, 2022, just six (6) days before Plaintiff's trip, Airbnb emailed Plaintiff an Adverse Action Notice ("AAN") informing her that, due to the felony criminal record reporting in her background report, it had canceled Plaintiff's upcoming reservations.

44. Airbnb also deactivated Plaintiff's account because the record as reported by Inflection disqualified her from renting any other properties through the platform.

45. Airbnb informed Plaintiff to contact Inflection if she wanted to learn more about the contents of her background report.

46. Thereafter, Plaintiff's first priority was rebooking her quickly approaching and very special trip. Plaintiff was especially worried about the lack of available accommodations as Tepoztlan is a very small town and her planned stay in Mexico City was during a popular holiday weekend.

47. On or about October 23, 2022, fearful that Inflection's background report would prevent her from signing up for any other vacation-rental website, and with limited accommodations available, Plaintiff booked a hotel in Mexico City under her fiancé's name for October 31 through November 5, 2022.

48. The alternative hotel in Mexico City cost Plaintiff $1,169.91, over $875.00 more than her $294.09 initial reservation with Airbnb.

49. On or about the same date, as there were no hotels available in the small town of Tepoztlan, Plaintiff booked a last-minute alternative rental property on Airbnb in Tepoztlan through her fiancé's Airbnb account for October 29 through October 31, 2022.

50. The rental property in Tepoztlan that Plaintiff had originally booked was no longer available.

51. The less desirable alternative Tepoztlan rental cost Plaintiff $261.28, $56.32 less than her initial $317.60 reservation with Airbnb. However, Plaintiff was disappointed in the loss of amenities and was also extremely stressed and worried, understandably so, that her fiancé's reservation would also be canceled by Airbnb at the last minute leaving them stranded with her mother's ashes.

52. On October 24, 2022, Plaintiff received an Adverse Action Notice from Airbnb confirming that her reservations had been canceled and that refunds for the reservations had been issued.

### Plaintiff Obtains a Copy of Inflection's Inaccurate Report

53. On or about October 26, 2022, Plaintiff contacted Inflection to obtain a copy of her report.

54. Upon review, Plaintiff discovered that Inflection was reporting a felony conviction on her report.

55. Plaintiff was shocked and humiliated to see Inflection's inaccurate reporting as Plaintiff has never been charged with or convicted of a felony in her life.

56. Plaintiff became extremely anxious, stressed, worried, and fearful that she would lose her job at a law firm or lose her notary license as a result of the false information Inflection was circulating about her through her consumer reports, including falsely portraying Plaintiff as a convicted felon.

**Plaintiff's First Dispute with Inflection in October 2022**

57. Immediately after reviewing her Inflection report and extremely upset by Inflection's inaccurate reporting, Plaintiff contacted Inflection to dispute the inaccuracy.

58. In Plaintiff's dispute, Plaintiff clearly stated that she was never charged with or convicted of a felony, as reported by Inflection.

59. Shortly thereafter, Plaintiff received email confirmation from Inflection that it had received her dispute.

60. Later that same day, Plaintiff received confirmation from Inflection that it had corrected her background check report.

61. On or about October 26, 2022, Inflection completed its reinvestigation of Plaintiff's dispute and sent its response to Plaintiff.

62. Following its reinvestigation of Plaintiff's dispute, Inflection determined the felony conviction it reported in the background check report it published to Airbnb regarding Plaintiff was inaccurate.

63. Inflection informed Plaintiff that it sent Airbnb an updated copy of her corrected background check report.

64. However, Inflection's reinvestigation response was too little, too late as Plaintiff had already incurred the additional expense to re-book her quickly approaching, important trip and further, had endured substantial emotional distress as a result of Inflection's inaccurate reporting.

65. Plaintiff was unable to reserve the properties she originally had booked and was extremely limited in her alternative options given the popular holiday and the fact that the trip was just three (3) days away.

66. Inflection had also already published the inaccurate background report to Airbnb, and Airbnb had already notified the property owners of the reason it cancelled Plaintiff's reservations, which was humiliating to Plaintiff.

67. Plaintiff continued to be extremely stressed, anxious, and worried that she would lose her job at a law firm or her notary license and that her reputation would be ruined as a result of the inaccurate information being circulated about her through her consumer reports.

68. To date, Plaintiff continues to be anxious and fearful, understandably so, that false information is still being circulated about her online and through her consumer reports, and that as a result, she may lose her job at a law firm or her notary license, which would force her to have to explain the embarrassing situation to her employer.

69. Consequently, Inflection's inaccurate background report caused Plaintiff to incur out-of-pocket economic loss and significant emotional distress damages.

70. Additionally, Inflection's corrected report had little impact on Airbnb.

71. On or about October 27, 2022, understanding that Airbnb had received a corrected copy of her background check report, Plaintiff called Airbnb and submitted a message through Airbnb's portal.

72. Plaintiff indicated that Inflection had corrected its error on her background check and reiterated that she is not a convicted felon and, therefore, her account should be reinstated.

73. On or about October 28, 2022, Plaintiff received email correspondence from Airbnb stating that it was not reactivating her account.

74. Plaintiff responded to the email and also emailed Airbnb's CEO requesting documentation evidencing Airbnb's policy prohibiting an individual with the specific misdemeanor charge from renting through the Airbnb platform.

75. Later that same day, Plaintiff received another email from Airbnb indicating that it had reactivated her account.

76. By the time Airbnb reactivated Plaintiff's account late on October 28, 2022, Plaintiff's departing flight was just a few hours away.

77. As a result of Inflection's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, economic losses; the expenditure of time and

money trying to correct Inflection's inaccurate report and reinstating her Airbnb account; damage to her reputation; and emotional distress including mental anguish, anxiety, humiliation, stress, frustration, embarrassment, and fear of losing her job at a law firm and notary license due to the false information being circulated about her through her consumer reports.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

78. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-77 of this Complaint as if fully stated herein.

79. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

80. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

81. At all times pertinent hereto, the above-mentioned background check report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

82. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's background check report and the files it published and maintains.

83. As a result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered a range of actual damages including, without limitation, economic losses; the expenditure of time and money trying to correct Inflection's inaccurate report and reinstating her Airbnb account; damage to her reputation; and emotional distress including mental anguish, anxiety, humiliation, stress, frustration, embarrassment, and fear of losing her job at a law firm and notary license due to the false information being circulated about her through her consumer reports.

84. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

86. Plaintiff demands a trial by jury.

Dated: May 24, 2023

BERGER MONTAGUE PC

/s/ Sophia M. Rios
Sophia M. Rios (SBN 305801)
srios@bm.net
401 B Street, Suite 2000
San Diego, CA 92101
Tel:   (619) 489-0300
Fax:   (215) 875-4604

Hans W. Lodge*, MN Bar No. 397012
Ivy Marsnik, MN Bar No. 0403177
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
hlodge@bm.net

imarsnik@bm.net

*Pro Hac Vice Forthcoming*

*COUNSEL FOR PLAINTIFF*